# Richmond

## DENARD SPADY v. FARMERS AND MERCHANTS TRUST BANK.

March 11, 1937.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

144

The opinion states the case.

*James E. Heath, W. A. Dickinson, Henry A. Wise* and *Quinton G. Nottingham,* for the plaintiff in error.

*Mapp & Mapp, Benjamin W. Mears* and *Otto Lowe,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

This is a proceeding under Code 1930, section 6130a, as amended by Acts 1934, chapter 298, to set aside a judgment for $3,000, confessed August 16, 1935, in the clerk's office of the circuit court of Northampton county against Denard Spady, by J. Warren Topping, his attorney in fact, in behalf of the Farmers and Merchants Trust Bank. From a judgment entered on the verdict in favor of the bank, Spady sought and obtained this writ of error.

While numerous errors are assigned, the case presents only two material questions. The first question is whether the Farmers and Merchants Trust Bank acquired the right to maintain any action on the note executed by Spady. The other question is whether, under the facts and circumstances, the obligation evidenced by the note entitled the holder to

have judgment confessed by an attorney under the warrant of authority incorporated in, and made a part of the note. These questions will be discussed in the order stated.

The facts and circumstances leading up to the execution and delivery of the note are as follows: For some years prior to 1932, two small banks, known as the Capeville Bank and the Townsend Banking Company, did a banking business in the lower part of Northampton county. The solvency of these two banks, like many others during that period, was seriously questioned by the Commissioner of Insurance and Banking. At the suggestion of the Commissioner of Insurance and Banking, and in order to prevent the institution of receivership proceedings, the directors of the Capeville Bank gave bonds aggregating $20,000, and the directors of the Townsend Banking Company gave their joint and several bond in the sum of $40,000, payable to the respective banks, to be held as security for payments to the depositors of the two corporations. Denard Spady was a director and depositor in the Townsend Banking Company, and one of the signers of the $40,000 bond. In January 1932, these two banks merged under the name of the Townsend Banking Company. The Commissioner of Insurance and Banking still being doubtful of the solvency of the merged corporation, required the directors of the merged bank to sign an agreement dated January 8, 1932, reading:

"MEMORANDUM of terms of an agreement entered into this the 8th day of January, 1932, between R. Fulton Powell, W. B. Bull, O. L. Rooks, S. R. Bull, Denard Spady, A. F. Fitchett, D. K. Long, J. W. Parsons, E. V. Downes, Roland Belote, George L. Tankard, H. D. Warren, Frank Parsons, Jr., C. C. Dunton and C. E. Jones, parties of the first part, and Townsend Banking Company, Incorporated, party of the second part.

"WITNESSETH, that, whereas by reason of the depreciation in the value of certain assets of said party of the second part and in consideration of the desire of said parties of the first part, being officers and directors of said party of

the second part, to guarantee its safety and solvency and in consideration also of the sum of Ten ($10.00) Dollars, the receipt of which is hereby acknowledged, the said parties of the first part have made and delivered to the said party of the second part their several notes, the amounts of which and the condition and stipulations of which are hereinafter set out.

"The said parties of the first part have severally given their several notes as follows:

"R. Fulton Powell, $10,500.00; W. B. Bull, $3,000.00; O. L. Rooks, $3,000.00; S. R. Bull, $3,000.00; Denard Spady, $3,000.00; A. F. Fitchett, $3,000.00; D. K. Long, $3,000.00; J. W. Parsons, $3,000.00; E. V. Downes, $3,000.00; Roland Belote, $1,250.00; George L. Tankard, $1,250.00; H. D. Warren, $5,000.00; Frank Parsons, Jr., $2,000.00; C. C. Dunton, $1,500.00, and C. E. Jones, $1,500.00.

"The said parties of the first part hereby waive the notice provided in section 4149(52) of the Code of Virginia.

"The aforesaid notes are hereby given, granted and delivered for the following purposes, that is to say: the Commissioner of Insurance and Banking of Virginia has ascertained a depreciation in the value of the assets of the said party of the second part of Forty-Five Thousand ($45,000.00) Dollars, more or less, and said notes are to create a reserve of which any loss or damage to the assets of the said party of the second part may be reimbursed or made good during a period of Three (3) Years, and none of said notes shall be surrendered or cancelled, nor shall the makers thereof be relieved of their liabilities thereunder, unless and until the whole of said depreciation is made good or eliminated. It is distinctly understood that any appreciation in the assets herein guaranteed shall not be pro ratable to the guarantors herein unless the amount is sufficient to cover the total obligation.

"The said party of the second part agrees to the above and accepts the same as evidence of its assent, and has caused this agreement to be executed by its duly authorized officers.

"Witness the following signatures and seals and the signature of the Townsend Banking Company, Incorporated, as executed by its duly authorized officers."

Denard Spady, one of the directors of the merged bank, pursuant to this agreement, executed the note in question, which is in the following words and figures:

"$3,000.00                              Townsend, Va. Jan. 11, 1932
On demand after date for money loaned, I promise to pay to the order of THE TOWNSEND BANKING CO., Inc., TOWNSEND, VA. Three Thousand and 00/100 DOLLARS with offset, negotiable and payable at THE TOWNSEND BANKING CO., INC., Townsend, Va.

The maker or makers, endorsers or endorser, each hereby waives his or her homestead exemption as to the debt evidenced by this note, and in the event default be made in the payment hereof at maturity, he, she or they, hereby agree to pay ten per cent, additional as attorney's fee for collection, and authorize and empower J. Warren Topping to confess judgment against him, her or them, jointly or severally for said sum; attorney's fees and costs of suit, in the Circuit Court of Northampton County, Virginia, or in the Clerk's Office, or in any court of competent jurisdiction, and each hereby waives protest, presentation, demand and notices of dishonor.

Witness my hand & seal.

                                        DENARD SPADY   (Seal)"

Spady continued as director of this institution and attended the stockholders and directors meetings until January, 1933. During the year 1932 there was no material change in the financial status of the Townsend Banking Company. It became apparent to the Commissioner of Insurance and Banking, and to the directors, that it would be impossible for this institution to work out its financial difficulties. Negotiations were begun with two other banks to take over and merge the assets of the three. It was finally agreed to merge the Townsend Banking Company, the Cheriton Banking Company, and the Farmers and Merchants Trust Bank of Cape Charles. The merger agreement, dated December 23, 1932, was approved by the Corporation Commission on Jan-

uary 13, 1933. In transferring the assets, rights and liabilities of the three banks to the merged bank, which took the name of the Farmers and Merchants Trust Bank, almost the exact language found in Code, section 3823, was embodied in the agreement reading thus:

"That upon the approval of the State Corporation Commission of said merger or consolidation, all of the aforesaid corporations shall be one corporation with the rights, privileges and franchises of each of said corporations, and all property, real, personal and mixed and all debts due on whatever accounts and all choses in action belonging to each or either of said corporations shall, for purposes and to the extent hereinafter set forth, be taken and deemed as transferred to and vested in the said merged and consolidated corporation, without further action, transfer, assignment or deed, and all property rights whatsoever of all the said corporations shall be as effectually the property of the said merged or consolidated corporation, as they were of all the said corporations so to be merged and consolidated, and all debts, liabilities and duties of each of said corporations shall when the said merger or consolidation be complete, attach to said merged or consolidated corporation, and be enforceable against it, to the same extent as if the said debts, liabilities and duties had been incurred by it."

On February 6, 1933, the Commissioner of Insurance and Banking delivered to the merged bank, the defendant in error, the Spady note, along with all of the other notes executed and delivered to him by the former directors of the Townsend Banking Company, to be held upon the same terms and conditions as they were held by the old bank.

Spady contends that his note and the other notes aggregating $47,000 were not assets of the Townsend Banking Company, and that the consolidated bank did not acquire any right or title thereto because: (1) The notes were given to create a reserve to protect the creditors of the Townsend Banking Company from any loss or damage; (2) that they were not carried on the books of the Townsend Banking

Company as a part of its assets; (3) they were not delivered to the Townsend Banking Company, but to the Commissioner of Insurance and Banking, and held by him until February 6, 1933; (4) they were not alluded to by name, or specifically mentioned in the merger agreement; under this agreement, all obligations of the Townsend Banking Company were assumed and made a primary obligation of the consolidated institution; (5) that the defendant bank has paid all the obligations of the Townsend Banking Company out of its own assets which were acquired by the merger.

The contract of January 8, 1932, on its face states that it was executed "to guarantee its safety and solvency." The notes were given "to create a reserve out of which any loss or damage to the assets of the said party of the second part (the Townsend Banking Company) may be reimbursed or made good," and further "that any appreciation in the assets herein guaranteed shall not be pro ratable to the guarantors herein, unless the amount is sufficient to cover the total obligation."

This bank as a going concern under the control of these, or other directors, or under a receiver, had the right to enforce payment of these obligations upon breach of the conditions stated in the contract, i. e., when the assets of the bank were found insufficient to cover the total obligation.

While the obligations as set forth in the contract and notes may not be assets in the strict meaning in which the word is generally used, they are evidences of rights, or choses in action owned and held by the Townsend Banking Company, and whether or not they passed as assets to the consolidated corporation under the merger, and other agreements of the parties, depends upon the intention of the parties at the time of the merger. This intention may be ascertained from the language used in the agreements, and in the manner in which each party, with the knowledge of the other, dealt with the items in controversy.

The pertinent evidence revealing this intention is as follows. Spady testified that between January and December, 1932, he made several efforts to obtain possession of his note, but

made no attempt to get the note after the date of the merger, and prior to the time this controversy arose. W. W. Dixon, president of the Townsend Banking Company from January 8, 1932, to January 13, 1933, and a member of the committee appointed by the board of directors to negotiate with the other banks for a consolidation, endeavored to consummate the merger, without treating the Spady note, and the notes of the other directors, as a part of the property of the bank to pass by the transfer, but failed, and informed Spady and the other directors of his failure.

After the merger agreement was prepared, but before it was signed, it was read to Spady and his associate directors, and thereupon a second agreement was made and entered between the old directors and the Townsend Banking Company, wherein Spady and the other directors who had signed the agreement of January 8, 1932, stipulated, promised and agreed: "* * * the said parties of the first part hereby recognize all the terms and conditions contained in a certain joint agreement proposed to be entered into by Farmers & Merchants Trust Bank, The Townsend Banking Company, Incorporated, and The Cheriton Banking Company, Incorporated, whereby the three said banks are to be merged or consolidated into one bank, and each of us hereby gives his consent to the full and complete agreement of merger and agree that said merger shall in no wise change, limit or curtail the obligation entered into by each of us for the purpose of guaranteeing the assets of the Townsend Banking Company, Incorporated, *but that said obligation shall remain a guarantee for the purpose already given to the same extent as if the agreement had been made with the merged or consolidated corporation.*" (Italics supplied.)

This written agreement, so far as the Townsend Banking Company was concerned, did not change one iota the terms and conditions of the former obligations of the directors. No good reason has been advanced or urged to show the necessity for this second agreement, except to establish the fact that it was the intention of Spady and his co-obligors to be bound, under its terms, to the proposed consolidated

corporation. What other interpretation can be placed on the last sentence of the above contract, which appears in italics?

Spady, after signing this contract, wherein he agreed to be bound as if the agreement had been made with the merged or consolidated corporation, was again informed in a director's meeting that the other two banking institutions would not execute the agreement to merge unless his note, along with the notes of the other directors aggregating $47,000, would be transferred to the consolidated banks. After receiving this information, he participated in both the directors and stockholders meetings called to act upon the merger agreement. The merger was consummated and Spady remained silent until called upon to pay $3,000, his part of the shortage. The written evidence, Spady's acts and conduct thereafter, establish the fact that he knew his obligation had been transferred to, and held by defendant in error, upon the terms and conditions set forth therein.

Pursuant to provisions of the merger agreement, two directors from each of the three banks were designated for the purpose of selecting, classifying and appraising the assets of the three constituent corporations. The committee was directed to make a schedule of all the assets and liabilities of the corporation, by name and amount, the assets to be classified as class A and class B, respectively. W. W. Dixon and Frank Parsons, Jr., were the two representatives of the Townsend Banking Company to serve upon this committee of six. They ascertained the public liability of the Townsend Banking Company, at that time, to be $187,256.00, and the value of the assets to be as follows:

"Value of Banking House and Lot. . . . . . . . . . .$ 8,700.00
Furniture and Fixtures. . . . . . . . . . . . . . . . . . . . 2,500.00
Cash and amount due from banks. . . . . . . . . . . 16,685.61
Class 'A' notes as selected by Committee of
 six as referred to. . . . . . . . . . . . . . . . . . . . . . . 50,771.48
*Face* value of Class 'B' notes as selected by
 said Committee . . . . . . . . . . . . . . . . . . . . . . . 36,229.70

Actual value of stocks, bonds and other securities ............................. 30,000.00
Note. (Book value of the above stocks and bonds, $138,976.89)
Face value of directors' notes, including note of plaintiff........................ 47,000.00

$191,956.79"

As may be seen from this statement, there is a difference between the book value of the stocks and bonds, and the actual value placed thereon by the committee, of $108,976.00. The former president and the cashier of the Townsend Banking Company executed a note in the name of the Townsend Banking Company, payable to the consolidated corporation, in which all assets of the Townsend Banking Company, not including the personal property and class A and B notes, were put up as collateral security. The directors' notes, including the Spady note for $3,000, were included in the named collateral. The merger agreement provided that the surplus assets over the liability of the Townsend Banking Company should be returned to it. The right of W. W. Dixon, as president, and D. L. Long, as cashier, to execute this note in behalf of the Townsend Banking Company, after the date of the merger, is challenged by Spady. While we do not deem it necessary to pass upon this question, we cite the instance as a circumstance showing that it was the understanding of the committee of six, including Frank Parsons, Jr., one of the signers of the agreement of January 8, 1932, and W. W. Dixon, showing that they understood that the notes of the directors of the Townsend Banking Company aggregating $47,000.00, passed, and were transferred by the merger agreement, to the consolidated bank.

The officers of the Commonwealth, representing the Commissioner of Insurance and Banking, stated that they regarded this contract and notes as a part of the assets of the Townsend Banking Company, and would not have given their consent to the merger, unless the obligations in question were to be

154

transferred to the merged corporation. On February 6, 1933, the Commissioner of Insurance and Banking delivered the obligations in question to the consolidated bank, and the consolidated bank entered them on its books as assets received from the Townsend Banking Company, and held by it as reserve to protect the depreciation or loss in value of the assets of the Townsend Banking Company.

We therefore conclude the intention of the parties to transfer the obligations in question to the consolidated bank has been clearly established by the written agreements of the parties, and their conduct both before and after the dates the written agreements were executed.

The other question involves the right of defendant in error to obtain judgment by confession on the Spady note. The guarantee of Spady and his co-obligors was to preserve the safety and solvency of the Townsend Bank during a period of three years, and to create a reserve upon which the holder could draw to make up any disparity between the value of the assets and the amount of the total liability. The defendant bank held these obligations upon the same terms and conditions. It kept a strict account of the assets and liabilities of this bank. Prior to the expiration of the three year period stated in the agreement, the consolidated bank requested the Commissioner of Insurance and Banking, who had participated in the agreement to merge, to make a detailed, full and complete examination of the assets formerly owned by the Townsend Banking Company and the public liabilities formerly due by the bank. This examination was completed as of January 5, 1935, and very clearly revealed that under the agreement executed by the directors on January 8, 1932, the full face amount of their respective obligations was then due the bank, that is, that the total public liabilities of the Townsend Banking Company exceeded the market value of its assets (excluding the notes of directors aggregating $47,000) by more than $60,000. There was other evidence tending to show that at no time after January 8, 1932, was the value of the assets equal to the amount of public liability,

unless the $47,000 of notes of the directors were included in the assets.

By the agreement of January 8, 1932, Spady had limited the extent of the liability assumed by him to $3,000, and by separate instrument, in which this limit was fixed, had authorized his attorney in fact, therein named, to confess judgment for him in the clerk's office of the circuit court of Northampton county. Judgment was confessed by this attorney, in the court specified, for the amount stated in the warrant.

The validity of the confession is attacked on the ground that the obligation undertaken by Spady was for an unliquidated sum, and in order to ascertain the amount, if any due, it was necessary to have a judicial inquiry *de-hors* the instrument containing the warrant. There are cases which support the view taken by plaintiff. However, practically all modern decisions on the subject are controlled by statute in the different jurisdictions. It would be useless to review the cases unless the statutes were also reviewed, and that would unnecessarily extend this opinion.

The Virginia statute, section 6130a, as amended in 1934, is rather elaborate, and sets forth the requirements in some detail. The provisions pertinent to this question read:

"Any person being indebted to another person, may at any time confess judgment in the clerk's office of any court of record in this Commonwealth, whether a suit, motion or action be pending therefor or not, * * *.

"Such confession of judgment may be made * * * by virtue of a warrant * * * incorporated in, and made a part of any note * * * authorizing the confession of a judgment thereon against the makers * * * in the event of default in payment thereof at maturity, * * *."

The warrant to confess judgment need not be acknowledged if it is set forth in the note or bond, as above stated, but such warrant shall specifically name the attorney who is to confess judgment, and the clerk's office in which the judgment is to be confessed.

The essence of the obligation which Spady assumed was this: That in the event there was a shortage or discrepancy between the assets and liabilities of the Townsend Banking Company, he would make that shortage good to the extent of $3,000. For that purpose he executed and delivered the note and warrant of the attorney in question, the contingency which was anticipated has happened. While sound business judgment might have restrained him from executing such a contract, there is no law in this jurisdiction which prohibits him from so doing. Upon the happening of the contingency Spady's obligation became definite and certain in such form that the holder had a right to maintain an action of debt thereon. He was therefore, "indebted to another" within the meaning of the statute.

While the ancient, accepted and regular procedure, by one of the common-law actions on the note, or by notice of motion, would have been preferable, in view of the provisions of the statute, and the contract of Spady, we cannot say that the confession of judgment, under the circumstances, constitutes reversible error. The statute provides that when a judgment has been confessed under a warrant of attorney, notice of that fact must be served upon the judgment debtor, who is given the right after ten days notice to the judgment creditor, to appear at the next term of court, and move to set aside the judgment "on any grounds which would have been an adequate defense or set off in an action at law instituted upon the judgment creditor's note, bond, or other evidence of debt upon which such judgment was confessed."

Such notice was given Spady, and he in turn gave notice to defendant in error that he would appear at the next term and move the court to set aside the confessed judgment. Issue was joined on this notice and a jury was impanelled, to whom he submitted his full and complete case under proper instructions of law applicable, with the result above noted.

We do not mean, by this opinion, to encourage the confession of judgment by virtue of a warrant attached to, and made a part of a note or bond, when it is necessary for

the holder to have a judicial inquiry *de-hors* the instrument to establish the sum due, but in view of the fact that the final result of this litigation would be the same, regardless of what form of action the defendant in error had instituted against Spady, we affirm the judgment. Spady, the only party here objecting, has had one fair trial upon the merits of his case. He is not entitled to more.

*Affirmed.*